**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| KATIE N. HARGER,<br>　　　Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 1:19-CV-302-TLS-JPK |
| | ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security<br>Administration,<br>　　　Defendant. | )<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Katie N. Harger on July 3, 2019, and her Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration Decision [DE 18], filed on January 7, 2020. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 21]. Plaintiff filed no reply brief, and the time to do so has passed.

On October 23, 2019, District Court Judge Teresa L. Springmann entered an Order [DE 13] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On October 30, 2016, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning May 17, 2008, due to multiple impairments: ADD/ADHD

(attention deficit disorder/attention deficit hyperactivity disorder), depression, anxiety, and bi-polar disorder. (AR 10, 69-97).[1] The application was denied initially and on reconsideration. (AR 69-97). Plaintiff then requested a hearing (AR 119-21), which was held before an Administrative Law Judge (ALJ) on June 1, 2018. (AR 31). On October 1, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant has not engaged in substantial gainful activity since October 30, 2016, the application date.
>
> 2. The claimant has the following severe impairments: bipolar I disorder, ADHD, PTSD, borderline personality disorder, anxiety disorder, and a cannabis use disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions and tasks, she can make judgments on simple work-related decisions, she can respond appropriately to occasional and superficial interactions with coworkers and supervisors, she should avoid work activity involving interactions with the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting.
>
> 5. The claimant is unable to perform any past relevant work.
>
> 6. The claimant was born [in] 1987 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
>
> 7. The claimant has at least a high school education and is able to communicate in English.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 30, 2016, the date the application was filed.

(AR 12-21).

The Appeals Council denied Plaintiff's request for review on May 21, 2019 (AR 1-6), rendering the ALJ's October 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

3

Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts two grounds for reversal of the ALJ's October 2018 decision. She contends: (1) the ALJ improperly assessed the opinions of Dan L. Boen, Ph.D., a psychological consultative examiner who examined Plaintiff in February 2017; and (2) as a result, improperly excluded limitations from Plaintiff's RFC and the hypotheticals posed to the Vocational Expert regarding Plaintiff's limitations in concentration, persistence, or pace and ability to remain on task. (Pl.'s Br. 12, 19-20, ECF No. 18). As explained below, the Court agrees that the ALJ erred in assessing the Dr. Boen's opinions, and that remand is required also to reconsider Plaintiff's mental RFC and the ALJ's hypotheticals to the Vocational Expert.

### I.   Dr. Boen's Opinions

Plaintiff's first ground for appeal challenges the ALJ's assessment of the February 2017 opinion of consultative examiner Dr. Dan Boen. In a report following his examination of Plaintiff on February 27, 2017, Dr. Boen found that Plaintiff's "thought form contained suicidal and paranoid ideation and visual hallucinations," her "immediate recall was moderately below normal," and her "concentration was significantly below normal." (AR 374). Based on these findings and the other results of a mental status examination, Dr. Boen then opined as follows:

5

> Katie can understand what Katie was asked to do on a job. Katie can remember what Katie was asked to do on a job. Katie would not be able to concentrate on the job. Katie would not be able to stay on task. Katie would have trouble being able to get along with coworkers. Katie would have trouble being able to get along with a boss.

(AR 375). According to Plaintiff, the limitations in this opinion regarding her concentration and on-task performance "are both independently work preclusive," because the Vocational Expert testified that "work would be precluded if a person were off task more than 10% of the workday, exclusive of breaks." (Pl.'s Br. 11, 16, ECF No. 18 (citing AR 61)). Yet despite this, Plaintiff argues, "the ALJ did not include Dr. Boen's limitations in relation to concentration and the ability to stay on task in the RFC," due to "improper weighting of the consultative examiner's opinion, cherry-picked evidence, and playing doctor." (*Id*. at 17, 20).

The ALJ's decision states that it "gives partial weight to the consultative examination opinion by Dr. Boen that the claimant can understand what she was asked to do on a job and remember what she is asked to do on a job, but would not be able to concentrate on the job, would not be able to stay on task, would have trouble getting along with coworkers, and would have trouble getting along with a boss." (AR 19 (citing AR 375)). The ALJ found these opinions "generally consistent with information contained in clinical reports completed by treating clinicians between late 2016 and early 2018," and therefore, "[l]imitations were included in the residual functional capacity to address memory, concentration, and social interaction deficits." (AR 19 (citing AR 380-410, 466-519)). But then, attempting to explain the reason for only "partial" (as opposed to greater) weighting of Dr. Boen's opinions, the decision further states that "multiple mental status examinations do not establish greater functional limitations." (AR 19). Putting aside the RFC itself (which is discussed in Part II below), there are two problems with this analysis. First, the ALJ failed to explain which "greater functional limitations" found by Dr. Boen were inconsistent with any of Plaintiff's treatment records, leaving this Court unable to discern which

of Dr. Boen's opinions were given partial or greater weight and which were discounted or rejected altogether. And second, the decision failed to explain which mental status examinations were inconsistent with the opinions that the ALJ discounted or rejected.

Regarding the first question of which opinions were discounted or rejected, the Commissioner agrees with Plaintiff that "the ALJ did not adopt Dr. Boen's opinion that Plaintiff could not concentrate." (D's Mem. 6, ECF No. 21; Pl.'s Br. 18, ECF No. 18-20). But the ALJ never squarely addressed which of Dr. Boen's opinions were adopted and which opinions were given less weight or rejected. The ALJ did find Dr. Boen's opinion regarding Plaintiff's inability to concentrate consistent with her medical records between late 2016 and early 2018, and indicated that limitations "were included" in the RFC "to address" Plaintiff's "memory, concentration, and social interaction deficits." (AR 19). The ALJ also found that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace, and expressly relied on Dr. Boen's opinion of "significant concentration deficits" when making that finding. (AR 15 (citing AR 374)). And while the RFC determined by the ALJ does not mention Plaintiff's concentration limitations specifically, even the Commissioner acknowledges that the ALJ attempted to address those limitations by restricting Plaintiff to "simple instructions and tasks" and "simple work-related decisions." (D's Mem. 7, 10, ECF No. 21). Thus, regardless of whether the RFC determined by the ALJ adequately addressed Plaintiff's concentration deficits, the decision indicates that the ALJ agreed with and relied upon Dr. Boen's opinion regarding those deficits. And if that opinion was nevertheless one the ALJ gave only "partial weight" (AR 19), the decision fails to explain what aspect of the opinion was discounted or why.

The ALJ's assessment of Dr. Boen's opinion that Plaintiff "would not be able to stay on task" is murkier still. Although the ALJ found this opinion also consistent with Plaintiff's medical

7

records between 2016 and 2018, a specific on-task limitation was omitted from the list of limitations intended to be included in Plaintiff's RFC. (AR 19). Perhaps the ALJ discounted or rejected Dr. Boen's opinion that Plaintiff "would not be able to stay on task" despite its support in her medical record, or conversely, believed that limiting Plaintiff to "simple instructions and tasks" sufficiently addressed both that limitation and her concentration deficits. Again, the decision fails to say. And while the Commissioner simply assumes the ALJ implicitly rejected Dr. Boen's opinions regarding Plaintiff's inability to concentrate and remain on task to the extent such limitations were omitted from the RFC (D's Mem. 7, ECF No. 21), the decision fails to explain not only which of Dr. Boen's opinions were discounted, but also the ALJ's bases for doing so.

As Plaintiff argues, an ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and "rejecting or discounting the opinion of the agency's own examining physician" is an "unusual step" that "can be expected to cause a reviewing court to take notice and await a good explanation." (Pl.'s Br. 18, ECF No. 18 (quoting *Beardsley*, 758 F.3d at 839; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). Here, however, the ALJ's decision provides far stronger (and clearer) reasons for adopting Dr. Boen's opinions regarding Plaintiff's concentration and on-task limitations than grounds to discount or reject them. As noted above, the ALJ expressly acknowledged that those opinions were consistent with Plaintiff's medical record, and cited Dr. Boen's examination report to support the ALJ's own finding that Plaintiff has moderate concentration limitations. (AR 15, 18-19). The ALJ also cited substantial additional evidence indicating Plaintiff's difficulties concentrating and staying on task that is consistent with both opinions, including Plaintiff's function report and testimony and a string of medical records. (AR 13, 15-17). And to the extent the ALJ implied any disagreement with one or both of these opinions, she stated only that "multiple mental status examinations do

not establish greater functional limitations" in Plaintiff's RFC, without identifying the examinations referenced or explaining how they were inconsistent with Dr. Boen's opinions. (AR 19). Such a generic and unsubstantiated observation falls far short of the "good explanation" for rejecting an agency examiner's opinion required by Seventh Circuit precedent.

The Commissioner attempts to supply such good explanation by highlighting evidence discussed elsewhere in the ALJ's decision, including Plaintiff's treatment records and reported daily activities, and the opinions of the non-examining agency psychologists (Drs. Unversaw and Shipley) on the initial review and reexamination of Plaintiff's application. (D's Mem. 4-7, ECF No. 21). According to the Commissioner, this evidence provided ample basis for the ALJ to discount Dr. Boen's opinions regarding Plaintiff's concentration limitations, even if the ALJ did not cite it as a basis to do so. (*Id*.). As an initial matter, this Court "is confined to the rationales offered by the ALJ," not those later suggested by the Commissioner. *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012).[3] But as importantly, even if the ALJ had relied on the documents and testimony cited by the Commissioner, they provide little reason to discount Dr. Boen's opinions, particularly in light of the support for those opinions cited by the ALJ.

For instance, while the ALJ cited treatment records showing Plaintiff was sometimes calm, cooperative, alert, and oriented, with normal affect and judgment (AR 18), the ALJ also found that treatment records during the same timeframe further indicated Plaintiff's concentration difficulties. (AR 13, 19). Similarly, while the ALJ relied on the agency reviewer opinions, they too found that Plaintiff has moderate limitations in concentrating, persisting, and maintaining pace, and (like the ALJ) relied on Dr. Boen's opinions in doing so. (AR 75-79, 86-93). In fact, as the Commissioner

---

[3] *See also Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order"); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("the ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it").

9

acknowledges, the ALJ gave the reviewing psychologists' opinions "only partial weight and found Plaintiff even further limited than these psychologists opined," and therefore "found Plaintiff's RFC more restrictive than the state agency psychologists' assessments." (D's Mem. 5, 11, ECF No. 21 (citing AR 19)). And while the ALJ cited Plaintiff's function report and testimony indicating she could pay attention for an hour when watching television and conduct various household chores and daily activities (*e.g.*, cooking, cleaning, laundry, grocery shopping and caring for a pet), the ALJ also noted Plaintiff's difficulty completing tasks (AR 15-19), and neither the ALJ nor the Commissioner has explained how such activities discredit Plaintiff's concentration difficulties or Dr. Boen's opinions reporting them. *See Lanigan v. Berryhill*, 865 F.3d 558, 563-64 (7th Cir. 2017) (noting that certain "activities and interests" are "wholly irrelevant" to a claimant's "ability to sustain concentration and social interaction": "Perhaps Lanigan was succeeding at 'activities and interests' relevant to competitive employment, or he might have been excelling at wholly irrelevant tasks, e.g., caring for his pets or vacuuming the house.").

Thus, even if the ALJ had considered the evidence cited by the Commissioner when assessing Dr. Boen's opinions, the decision also identifies substantial evidence supporting those opinions on which the ALJ expressly relied. To be clear, however, this is not to say that Dr. Boen's consultative examination report or any other evidence compels the conclusion that Plaintiff "would not be able to concentrate on the job" and "would not be able to stay on task" as Dr. Boen opined. (AR 375). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley*, 758 F.3d at 839. And perhaps after considering the entire record, the ALJ saw good reason to accord one or more of Dr. Boen's opinions only "partial weight," as the ALJ indicated. (AR 19). But again, an ALJ "can reject an examining physician's opinion only for reasons supported by

10

substantial evidence in the record," and "rejecting or discounting the agency's own examining physician" calls for "a good explanation" of that evidence. *Beardsley*, 758 F.3d at 839; *Gudgel*, 345 F.3d at 470). And while there may be compelling evidence to warrant discounting or rejecting one or more of Dr. Boen's opinions, the ALJ failed to identify it, or even the opinions in Dr. Boen's report that were inconsistent with it. This Court therefore recommends remand of this case for reconsideration of Dr. Boen's opinions in light of the full record and any additional evidence or opinions offered or solicited on remand, and for a clearer explanation of how and why any such evidence warrants discounting any of Dr. Boen's opinions.[4]

## II.     The ALJ's Mental RFC Determination

Plaintiff next challenges the ALJ's RFC determination and related hypotheticals to the Vocational Expert (VE) insofar as they address (or fail to address) her limitations in concentrating and staying on task. She argues that Dr. Boen's opinions and the ALJ's own finding of moderate limitations in concentration, persistence, or maintaining pace warranted concentration and on-task limitations in Plaintiff's RFC and the hypotheticals to the VE. (Pl.'s Br. 17-20, ECF No. 18). The Commissioner counters that "an ALJ does not need to invoke the exact phrase 'concentration, persistence, or pace' in the RFC"; rather, the ALJ need only "explain how the RFC accounted for moderate restrictions in concentration, persistence, or pace" sufficiently to "build an accurate and logical bridge between the evidence of mental impairments and the hypothetical mental RFC." (D's Mem. 8-9, ECF No. 21 (quoting *Juzysta v. Berryhill*, No. 1:18-4, 2019 WL 762509, at *4 (N.D. Ind. Feb. 21, 2019)). According to the Commissioner, the ALJ provided such a "valid

---

[4] Plaintiff argues (and the Commissioner does not dispute) that "there is no other examining psychologist or psychiatrist (whether treating or non-treating) in the record who renders an opinion on Plaintiff's psychological limitations." (Pl.'s Br. 16, ECF No. 18). In that event, and if the ALJ rejects or discounts one or more of Dr. Boen's opinions on any remand, the ALJ may consider the need for additional evaluations. *See Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013) (remanding for reconsideration of treating psychiatrist's opinion where "there was no other medical opinion for the ALJ to fall upon": "if the ALJ thought this evidence insufficient–as she apparently did–it was her responsibility to recognize the need for additional evaluations").

explanation" in this case, by clarifying in the decision that "evidence regarding daily activities demonstrates a greater level of physical and psychological function than the claimant alleges," and that "clinical reports document no considerable functional deficits beyond those in the residual functional capacity." (D's Mem. 9-11, ECF No. 21 (quoting AR 18)).

The Court is mindful that ALJs are not required "to use certain words, or refrain from using others," when addressing limitations in "concentration, persistence, and pace" ("often shorthanded as CPP"). *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020). But the Seventh Circuit has been equally clear in holding that an RFC limitation to "simple" or "unskilled" work is insufficient by itself to account for such limitations, since "the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace." *Id*. "Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Id*. Thus, while the Commissioner is right that no particular words are required, an RFC restriction to "simple instructions and tasks" such as the ALJ adopted here (AR 15) may not be used as a "shortcut" for addressing a claimant's limitations in concentration, persistence, or pace. *Martin*, 950 F.3d at 374. The error is in merely "assuming" that restricting the claimant to simple tasks "would account for her mental health impairments." *Id*. And contrary to the Commissioner's argument, the decision in this case suggests that very assumption.

The decision's discussion of Plaintiff's daily activities does not alter this conclusion. As explained above, even the ALJ acknowledged that Plaintiff is able to watch a television program for only an hour at a time (AR 17), and the decision failed to explain how her other activities (cooking, cleaning, laundry, grocery shopping, and caring for a pet) were "relevant to competitive employment," or suggested "adequate ability to sustain concentration" in a work setting. *See*

12

*Lanigan*, 865 F.3d at 563-64 (caring for pets and vacuuming the house would be "wholly irrelevant tasks"). The ALJ also mentioned reports of Plaintiff's interest in training to become a massage therapist, a job interview, and vocational rehabilitation (AR 18), but the record shows the training never happened (AR 37), and yet the ALJ found Plaintiff had concentration deficits *despite* her other contemplated activities. (AR 15, 18-19). The decision's discussion of Plaintiff's medical records likewise fails to explain the ALJ's mental RFC determination. Although the ALJ stated that "clinical reports document no considerable functional deficits beyond those in the residual functional capacity," the decision promptly thereafter credits Dr. Boen's opinions that Plaintiff "would not be able to concentrate on the job" and "would not be able to stay on task" as consistent with her medical history, and acknowledges the need to include limitations in Plaintiff's RFC to address her limitations in concentration. (AR 18-19). The most the Court can infer from this analysis is that the ALJ believed the RFC she determined was sufficient to address Plaintiff's CPP and on-task limitations, but the decision fails to explain how or why it does.

As other district courts have concluded, this is precisely the type of unexplained conclusion criticized by the Seventh Circuit in *Martin*.[5] "This is not to suggest that every RFC in a case involving moderate CPP limitations must be crafted in the same terms as the RFC in *Martin*. Rather, the lesson of *Martin* and the other Seventh Circuit opinions on this subject appears to be a familiar one -- namely, that the ALJ must provide enough reasoning to 'build an accurate and logical bridge from the evidence to the conclusion.'" *Chojnacki*, 2020 WL 1888246, at *4 (quoting

---

[5] *See*, *e.g.*, *Chojnacki v. Saul*, No. 19-cv-432, 2020 WL 1888246, at *5 (W.D. Wis. Apr. 16, 2020) ("While the record arguably supported a finding of lesser CPP limitations, the ALJ concluded that they were moderate, thus triggering her obligation to account for those limitations in the RFC. The ALJ's decision offers no such accounting -- other than the ALJ's unsupported assumption that in spite of his moderate CPP limitations, plaintiff could perform simple and routine tasks – and thus is simply without support under Seventh Circuit law." (citing *Martin*, 950 F.3d at 374)); *Michael S. L. v. Comm'r of Soc. Sec.*, No. 19-cv-1083, 2020 WL 1955253, at *5 (S.D. Ill. Apr. 23, 2020) (ALJ improperly "limited Plaintiff to work involving 'simple, routine, and rote tasks' without adding more, especially concerning persistence . . . without more, the RFC does not adequately account for moderate limitations in concentration, persistence or pace" (citing *Martin*, 950 F.3d at 373-74)).

13

*Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Even the Commissioner concedes that such an accurate and logical bridge between Plaintiff's demonstrated mental limitations and the ALJ's RFC determination is required. (D's Mem. 8, ECF No. 21). But as in *Chojnacki* and *Michael S. L.*, while there might be legitimate reasons to believe that Plaintiff retained the ability to carry out simple instructions and tasks despite the moderate CPP limitations found by the ALJ, the decision merely assumes that ability (contrary to *Martin*) and thus improperly fails to draw the requisite logical bridge between the evidence and that conclusion. *See supra* note 5; *see also Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (remanding for reconsideration of RFC in relation to limitations in concentration, persistence, or pace and understanding and remembering instructions: "This failure to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC requires us to remand for further proceedings.").

For these reasons, the Court recommends that this case be remanded also for reconsideration of Plaintiff's mental RFC and a clearer explanation of whether and how it addresses her limitations in concentration, persistence, or pace and remaining on task. That analysis should also address Dr. Boen's opinions that Plaintiff "would not be able to concentrate on the job" and "would not be able to remain on task" (AR 375) and explain the extent to which those opinions are adopted or rejected. The ALJ must also assure that any Vocational Expert relied upon has been fully apprised of such limitations as well. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("the ALJ need not put the questions to the VE in specific terms–there is no magic words requirement," but "the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform. . . . The best way to do that is by including the specific limitations–like CPP–in the hypothetical." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 31st day of July, 2020.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT